IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| KATHLEEN SIFFEL, | : | CIVIL ACTION |
|         Plaintiff, | : | |
| vs. | : | |
| | : | NO. 11-3713 |
| BEST BUY CO., INC., | : | |
|         Defendant. | : | |

_____

DuBois, J.                                                                                                October 3, 2012

**M E M O R A N D U M**

### I.     Introduction

Plaintiff Kathleen Siffel commenced this negligence action against defendant Best Buy Stores, L.P. (incorrectly designated in Complaint as "Best Buy Co., Inc.") ("Best Buy") in which she claims damages arising out of a slip and fall on August 11, 2009.  Presently before the Court is defendant's Motion for Summary Judgment ("Motion"), which the Court denies for the reasons set forth below.

### II.    Background

On August 11, 2009, at approximately 4:30 p.m., Siffel, who is a resident of Pennsylvania, entered defendant's[1] store located at 310 Commerce Boulevard in Fairless Hills, Pennsylvania.[2] (Compl. 2.)  She was shopping for a gift card to give to her daughter's boyfriend as a birthday present. (Pl. Repl., Ex. A, Kathleen Siffel Dep. 7-8.)  After entering the store, Siffel asked an employee to direct her to the gift card display. (Id. at 10.)  She proceeded into the store some eight to ten paces, and turned to confirm with the employee that she was going in

---

[1] Defendant Best Buy Stores, L.P. is a Minnesota corporation with its principal place of business in Minnesota. (Not. Rem. 2).
[2] As required on a motion for summary judgment, the facts set forth in this Memorandum are presented in the light most favorable to plaintiff, the non-moving party.

1

the correct direction, at which point she took a further step and slipped on a "circular add [sic]", causing her to stumble into the store's Welcome Stand.  (Id. at 20.)

   Siffel did not see any advertising circulars or inserts on the floor prior to her fall as she was distracted by signs, displays, and her own search for gift cards.  (Id.)  However, she identified the cause of her slip as an advertisement paper because it was still beneath her foot when she "landed against the podium."  (Id. at 12.)  The fall occurred within a few feet of the store's Welcome Stand such that her right foot slipped and she "ended up hugging into the podium to prevent [her]self from falling."  (Id. at 14.)  Plaintiff asserts that the advertisement came from the store's Welcome Stand, and defendant does not specifically contest this point. (Pl. Repl. 1); (Mot. 7.)

   Siffel sought medical treatment after the accident.   Following x-rays taken at Lower Bucks Hospital, Dr. Mark Burton informed her that she had broken sesamoid bones in her right foot.  (Pl. Repl., Ex. A, Kathleen Siffel Dep. 26.)  Siffel was fitted with a large cast on her right foot, which Dr. Burton later replaced with a protective boot.  (Id. at 27, 40.)  Later, Siffel developed pain in her left foot, which both Dr. Burton and Dr. Wen Chao agreed was due to her attempt to keep weight off her right foot.  (Id. at 43-44.)  The result of the extra weight caused a stress fracture and tendonitis in her left foot.  (Id. at 44.)  In sum, Siffel has suffered or continues to suffer from: "fractured left foot; fractured hallux of the right toe; distal neuropathy of the peroneal and sural nerve fibers of the right foot; complex regional pain syndrome; reflex sympathetic dystrophy-right lower extremity and; injuries to her nerves and nervous system . . ." (Compl. 6.)  Further, she claims that she was made to undergo, inter alia, "great mental anguish, emotional distress, embarrassment," and "humiliation."  (Id.)

Plaintiff filed her Complaint in the Court of Common Pleas of Philadelphia County, Trial Division, on May 5, 2011.  Defendant then removed the case to this Court on June 8, 2011. Plaintiff alleges in the Complaint that the defendant was negligent in failing to properly inspect and maintain its floors.  Specifically, she claims that defendant "had actual notice or, alternatively had constructive notice or, in the exercise of reasonable care, should have known of the . . . defect . . . ." (Compl. 5.)

### III.    Standard of Review

In considering a motion for summary judgment, "the court is required to examine the evidence of record in the light most favorable to the party opposing summary judgment, and resolve all reasonable inferences in that party's favor." Wishkin v. Potter, 476 F.3d 180, 184 (3rd Cir. 2007).  The party opposing the motion, however, cannot "rely merely upon bare assertions, conclusory allegations or suspicions" to support its claim.  Fireman's Ins. Co. v. DuFresne, 676 F.2d 965, 969 (3rd Cir. 1982). After examining the evidence of record, a court should grant summary judgment if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); accord Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).

A factual dispute is material when it "might affect the outcome of the suit under the governing law" and genuine when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (citation omitted).

IV.     Discussion

A.   Legal Standard

Under Pennsylvania law, "[i]n any case sounding in negligence, a plaintiff must demonstrate: (1) a duty of care; (2) the breach of the duty; (3) a causal connection between the conduct and the resulting injury; and (4) actual loss or damage resulting to the plaintiff." Farabaugh v. Pa. Turnpike Comm'n, 911 A.2d 1264, 1272-73 (Pa. 2006).  Specifically, for claims by purported business invitees, § 343 of the Restatement (Second) of Torts governs.[3] § 343 states that a business is liable for harm to patrons caused by a dangerous condition on its premises but only if the owner has notice of the condition, which poses an unreasonable risk of harm, and where the owner fails to exercise reasonable care to protect patrons from the condition.  See Martino v. Great Atl. & Pac. Tea Co., 419 Pa. 229, 233 (1965) (discussing § 343 and holding that § 343 is "[a]n accurate statement of the law of Pennsylvania. . . .").

§ 343 allows a plaintiff to establish notice in several ways.  Actual notice may be proven either directly, in showing that the owner "had actual notice of the condition," or it may be inferred "where the condition is one which the owner knows has frequently recurred . . . ." Moultrey v. Great A & P Tea Co., 422 A.2d 593, 596 (Pa. Super. Ct. 1980).  Further, a plaintiff may show constructive notice, wherein "the condition existed for such a length of time that in the exercise of reasonable care the owner should have known of it . . . ." Id.  Lastly, "if the harmful

---

[3] Plaintiff asserts that § 344 of the Restatement also applies here.  § 344 holds liable a possessor of land for harm caused by the acts of third parties where the possessor fails to exercise reasonable care to discover such acts or protect visitors from such harm.  See Rabutino v. Freedom State Realty Co., Inc., 809 A.2d 933, 939 (Pa. Super. Ct. 2002) (finding that there is a "duty owed to any business invitee, namely, [a business must] take reasonable precaution against harmful third party conduct that might be reasonably anticipated.")  However, the section is only applicable to cases where there is evidence that the dangerous condition was caused by third parties.  See Read v. Sam's Club, No. 05-170, 2005 WL 2346112 (E.D. Pa. Sept. 23, 2005) ("[W]ithout evidence that the spill was caused by the negligence of a third party and that third-party spills were a frequent occurrence, plaintiff's negligence claim under § 344 of the Restatement (Second) of Torts fails as a matter of law.")  As there is no evidence in this case that the advertisement was dropped by a third party, § 344 is inapplicable.

4

transitory condition is traceable to the possessor or his agent's acts, (that is, a condition created by the possessor or those under his authority), then the plaintiff need not prove any notice in order to hold the possessor accountable for the resulting harm." Id.

Defendant argues that plaintiff has not established a prima facie case of negligence because plaintiff has failed to demonstrate a breach of duty under § 343. The crucial inquiry in this type of case is whether defendant (1) had actual notice of the dangerous condition, or (2) had constructive notice of the dangerous condition.[4]

To survive summary judgment, plaintiff's affirmative evidence demonstrating notice "must amount to more than a scintilla, but may amount to less (in the evaluation of the court) than a preponderance." Saldana v. Kmart Corp., 260 F.3d 228, 232 (3rd Cir. 2001). In this case, plaintiff has advanced sufficient evidence to allow a jury to infer that the defendant had actual notice of the dangerous condition.

B.  Plaintiff's Evidence of Actual Notice

Plaintiff first claims that defendant had actual notice of the advertisement in question, because litter around the Welcome Stand was a recurring condition. (Pl. Repl. 5) Under Pennsylvania law, for actual notice to be imputed to defendants on the basis of a recurring condition, such a condition must have recurred in a "pervasive or obvious" fashion. Farina v. Miggys Corp. Five & Six, No. 09-00141, 2010 WL 3024757 at *7 (M.D. Pa. July 29, 2010).

In this case, plaintiff has advanced sufficient evidence to meet the "pervasive and obvious" standard. Id. Employees Eric Fliegelman, Nigel Schrader, and Kristy Hall each testified that they had previously seen brochures on the floor around the Welcome Stand. (Pl. Repl., Ex. B, Def. General Manager, Eric Fliegelman Dep. 37); (Pl. Repl., Ex. F, Def. Assets

---

[4] In her response to defendant's Motion to Dismiss, plaintiff also asserts for the first time that defendant created the dangerous condition. (Pl. Repl. 5). The Court notes, however, that plaintiff has not pled this claim. Accordingly, the Court does address this argument.

Protection Associate, Nigel Schraeder Dep. 30); (Pl. Repl., Ex. E, Def. Operations Manager, Kristy Hall Dep. 19.) Schraeder further explained that, "[n]ormally, either customers are grabbing one and pulls off more than one, or the wind from the doors [causes the brochures to fall off the stand]." (Pl. Repl., Ex. F, Def. Assets Protection Associate, Nigel Schraeder Dep. 30.) Finally, Cindy Kerner heard customers complain about the "messy" store floor prior to plaintiff's accident. (Pl. S. Repl., Ex. A, Cindy Kerner Aff. 2.) In sum, three of defendant's employees saw brochures on the floor near the Welcome Stand prior to plaintiff's accident, with one employee explaining why brochures would "normally" fall, and an additional fourth employee distinctly recalled customer complaints made about debris littering the store floor. In light of such evidence, a jury could infer that defendant had actual notice of the dangerous condition, as it recurred in a "pervasive or obvious fashion." Farina, 2010 WL 3024757 at *7.

      Plaintiff additionally claims that direct evidence establishes that defendant had actual notice of the advertisement on the day in question. In her deposition, Siffel stated that "it was hard to say that," two store employees "could not have seen [ads on the floor]," because the papers were "in their perfect view." (Pl. Repl., Ex. A, Kathleen Siffel Dep. 20.) One of those employees was Cindy Kerner, who admits that on the day of the accident she worked "behind the Customer Service desk and had an unobstructed, clear view of the Welcome Stand . . ." (Pl. S. Repl., Ex. A, Cindy Kerner Aff. 1.) Kerner further notes that after the accident, she noticed "at least two copies (there may have been more) . . . [of] brochures on the floor at the base of the Welcome Stand." (Pl. S. Repl., Ex. A, Cindy Kerner Aff. 2.) She does not specifically state whether she saw brochures or advertisements on the floor prior to plaintiff's accident. On this issue plaintiff testified that there were "under ten" papers on the floor near the Welcome Stand immediately after her accident. (Pl. Repl., Ex. A, Kathleen Siffel Dep. 13.) Finally, plaintiff

6

asserts that the employee who initially directed her to the gift card display had "a clear line of sight" to the Welcome Stand.  (Id. at 16.)

"Actual notice is notice given directly to, or received personally by, a party.  In other words, the plaintiff must demonstrate that the defendant knew of the dangerous condition and not merely that the defendant should have known of the condition."  Torres v. Control Bldg. Services, No. 09-0178, 2010 WL 571789 at *2 (E.D. Pa. Feb. 16, 2010) (citing Black's Law Dictionary (8th ed. 2004)).  Defendant denies that it had actual notice in this case, and points to Harclerode v. G. C. Murphy Co. as controlling authority.  In Harclerode the plaintiff slipped and fell on a puddle of water in defendant's store.  It was alleged that the store manager had passed by the puddle only minutes before the accident and was within six feet of it when the plaintiff fell.  217 A.2d 778 (Pa. Super. Ct. 1966).  The court concluded, "[i]t cannot be said that this defendant knew of the existence of a dangerous condition," solely based on those facts.  Id. at 780.

In this case, however, a jury could properly find that defendant knew about the dangerous condition prior to the accident.  Plaintiff has alleged that three of defendant's employees were near the site of her accident beforehand, and unlike Harclerode, that they were positioned with clear lines of sight to the Welcome Stand and the area around it where she fell.   (Pl. Repl., Ex. A, Kathleen Siffel Dep. 16, 20.)  Cindy Kerner's statement that she noticed other brochures on the floor immediately after plaintiff's accident further supports plaintiff's position that the brochures were on the floor in plain view of several of defendant's employees immediately before the accident.  Accordingly, plaintiff has advanced "more than a scintilla" of evidence that defendant had actual notice of the dangerous condition.[5]  See Saldana, 260 F.3d at 232.

---

[5] In view of this disposition, the Court need not address plaintiff's claims of constructive notice.

## V.     CONCLUSION

For the reasons set forth above, defendant's Motion for Summary Judgment is denied.

An appropriate order follows.